# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Insulate SB, Inc.,

                    Plaintiff,

          v.

Advanced Finishing Systems, Inc.;
Airtech Spray Systems; Barnhardt
Manufacturing Company; C.H. Reed,
Inc.; C.J. Spray Inc.; Coast Industrial
Systems, Inc.; Coatings Holdings, Ltd.;
Demilec (USA), LLC; Dove Equipment
Co., Inc.; Endisys Fluid Delivery Systems;
Golden State Paint Corporation; Graco,
Inc.; Graco Minnesota, Inc.; Jack
De Mita; Intech Equipment & Supply,
LLC; Marco Group International, Inc.
(Marco); MCC Equipment & Service
Center; Specialty Products, Inc.; Spray
Foam Nation (registered under Energy
Independence Inc.); Spray Foam Systems,
LLC; Spray-Quip, Inc.; and Ultimate
Linings, Ltd.;

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 13-2664 ADM/SER

---

Christopher A. Nedeau, Esq., Veronica L. Harris, Esq., and Natasha Saggar Sheth, Esq.,
Nossaman LLP, San Francisco, CA, and Richard A. Lockridge, Esq., Karen H. Riebel, Esq., and
Eric N. Linsk, Esq., Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, on behalf of Plaintiff
Insulate SB, Inc.

Stephen P. Safranski, Esq., Anne M. Lockner, Esq., Kellie Lerner, Esq., George D. Carroll, Esq.,
and Mahesha P. Subbaraman, Esq., Robins Kaplan, Miller & Ciresi, LLP, Minneapolis, MN, on
behalf of Defendants Graco Inc., and Graco Minnesota, Inc.

Lewis A. Remele, Jr., Esq., and Christopher R. Morris, Esq., Bassford Remele P.A.,
Minneapolis, MN, on behalf of Defendants Advanced Finishing Systems, Inc.; Airtech Spray
Systems; C.H. Reed, Inc.; C.J. Spray Inc.; Coast Industrial Systems, Inc.; Coatings Holdings,
Ltd.; Demilec (USA), LLC; Engineered Distribution Specialties, LLC (identified in the
Complaint as Endisys Fluid Delivery Systems); Golden State Paint Corp.; Intech Equipment &
Supply, LLC; Marco Group International, Inc.; MCC Equipment & Service Center; Specialty
Products, Inc.; Spray Foam Systems, LLC; Spray-Quip, Inc.; and Ultimate Linings, Ltd.

Elizabeth M. Sorenson Brotten, Esq., Foley & Mansfield, PLLP, Minneapolis, MN; and Jeanne Welch Sopher, Esq., and Kevin M. Ward, Esq., Rawle & Henderson LLP, Pittsburgh, PA, on behalf of Defendant Barnhardt Manufacturing Company.

Barry A. O'Neil, Esq., Lommen, Abdo, Cole, King & Stageberg, PA, Minneapolis, MN; and L. Pahl Zinn, Esq., Dickinson Wright PLLC, Detroit, MI, on behalf of Defendant Spray Foam Nation.

_____

## I.  INTRODUCTION

On December 17, 2013, the undersigned United States District Judge heard oral argument on Defendants Graco, Inc. and Graco Minnesota, Inc.'s (collectively "Graco") Motion to Dismiss [Docket No. 211] and Motion to Stay Discovery [Docket No. 232], Distributor Defendants' Motions to Dismiss [Docket Nos. 224 and 241],[1] and Plaintiff Insulate SB, Inc.'s ("Insulate") Motion for Expedited Discovery [Docket No. 254].  For the reasons set forth below, Graco and the Distributor Defendants' motions to dismiss are granted and the parties' discovery motions are denied as moot.

## II.  BACKGROUND[2]

This is a putative antitrust class action against Graco, a manufacturer of fast-set equipment used to install foam insulation, and against dozens of Graco's alleged distributors (the

_____

[1] The "Distributor Defendants" are all of the named defendants except Graco, Inc. and Graco Minnesota, Inc.  The Distributor Defendants joining in the Motions to Dismiss are: Advanced Finishing Systems, Inc.; Airtech Spray Systems; Barnhardt Manufacturing Company; C.H. Reed, Inc.; C.J. Spray Inc.; Coast Industrial Systems, Inc.; Coatings Holdings, Ltd.; Demilec (USA), LLC; Engineered Distribution Specialties, LLC (incorrectly identified in the Complaint as Endisys Fluid Delivery Systems); Golden State Paint Corp.; Intech Equipment & Supply, LLC; Marco Group International, Inc.; MCC Equipment & Service Center; Specialty Products, Inc.; Spray Foam Nation (registered under Energy Independence Inc.); Spray Foam Systems, LLC; Spray-Quip, Inc.; and Ultimate Linings, Ltd.

[2] In considering the Motions to Dismiss, the Court takes the facts alleged in the Complaint to be true.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

"Distributor Defendants").[3]   Insulate alleges Graco acquired two of its closest competitors in the fast-set equipment market to gain significant market share and eliminate competition, which allowed Graco to raise the prices of its fast-set equipment products and reduce product options after the acquisitions.  Compl. [Docket No. 1] ¶¶ 156, 160-61.  Insulate also alleges Graco and the Distributor Defendants conspired with each other to exclude new entrants into the fast-set equipment market by entering into exclusivity agreements, boycotting competing products, vertically fixing prices, and controlling geographic distribution areas.  Id. ¶¶ 9-10, 95-96, 104-05, 110-12, 171.  Claiming violations of federal and state antitrust laws and state consumer protection statutes, Insulate seeks damages and injunctive relief on behalf of end users who purchased fast-set equipment from Graco or one of its Distributors during the Class Period.[4]  Id. ¶¶ 1, 187, 198-283.

## A.  The Parties

Graco is incorporated in Minnesota and manufactures fast-set equipment.  Id. ¶¶ 4, 38. Fast-set equipment includes spray guns, heated hoses, and other components, and is used primarily by contractors to install spray foam insulation in residential and commercial buildings. Id. ¶¶ 4, 56-58.  The sale of fast-set equipment to end users occurs almost exclusively through specialized distributors who act as intermediaries between the manufacturer and contractors.  Id. ¶ 63.  The Distributor Defendants sold fast-set equipment during the Class Period.  Id. ¶¶ 21-37,

---

[3] Insulate initially named thirty-three distributors as defendants, but voluntarily dismissed twelve of them shortly after this case was transferred from Pennsylvania to Minnesota.  See Notices of Voluntary Dismissal [Docket Nos. 200-210, 218].

[4] The Class Period runs from "February 1, 2005, until the effects of the anticompetitive conduct end."  Id. ¶ 187.

39-52.  Insulate is a fast-set contractor incorporated in California.  Id. ¶ 20.  Insulate purchased

fast-set equipment from Distributor Defendant Intech Equipment & Supply, LLC, an Arizona

corporation.  Id. ¶¶ 20, 41.  Insulate alleges it was force to pay higher prices as a result of the

Defendants' conduct.  Id. ¶ 20.

## B.  Graco's 2005 and 2008 Acquisitions of Fast-Set Equipment Manufacturers

In February of 2005, Graco purchased Gusmer Corporation ("Gusmer"), the world's

largest manufacturer of fast-set equipment, from PMC Global, Inc. ("PMC") for $65 million.  Id.

¶¶ 148-49.  Following the acquisition, Graco closed Gusmer's fast-set equipment manufacturing

facilities.  Id. ¶ 151.  Graco's acquisition of Gusmer caused the Gusmer line of products to

become obsolete.  Id. ¶ 160.  "This forced buyers, many begrudgingly, to switch to the more

expensive corresponding Graco models."  Id. ¶ 161.

In February of 2008, Graco purchased GlasCraft, the only other competing manufacturer

of fast-set equipment, for $35 million.  Id. ¶¶ 152, 155.  Following the GlasCraft acquisition,

Graco closed GlasCraft's fast-set equipment manufacturing facilities.  Id. ¶ 151.

## C.  Defendants' Alleged Conspiracies to Boycott and Exclude Competition

The Complaint alleges "[u]pon information and belief" that after acquiring Gusmer in

2005, Graco agreed with each of its Distributors to exclude new entrants from the fast-set

equipment market.  Id. ¶ 104.  The Complaint further alleges that, "[u]pon information and

belief, the Distributors collectively agreed to and conspire [sic] with one another to exclude new

entrants" from the fast-set equipment market.  Id. ¶ 105.  This allegation is based on the theory

that "[t]he Distributors were economically motivated to join and enforce the conspiracy to

exclude new entrants in the [fast-set equipment] market, because the conspiracy enabled

Distributors to: charge Contractors anticompetitive prices for fast-set equipment, and control geographic distribution areas and exclude new distributors from such areas, who might be willing to sell new entrants' products." Id. ¶ 112.

**D.  PMC and Former Gusmer Employees' 2007 Reentry Into Market; Graco's Reaffirmation of Boycott**

In 2007, former owners and employees of Gusmer, operating through PMC, Garraf Maquinaria S.A. ("Garraf"), and Gama Machinery USA, Inc. ("Gama") sought to reenter the fast-set equipment market. Id. ¶ 99.  Graco allegedly viewed Gama and PMC as a threat to its monopoly power in the fast-set equipment market, and sought the advice of unidentified "key Distributors" to determine "how best to reinforce the Distributors' individual and collective agreements" to exclude new entrants from the market. Id. ¶ 102, 114.  Following this alleged consultation, Graco sent a letter to Distributors in October 2007 (the "October 2007 Letter"). The Complaint avers the October 2007 Letter was a reminder to Distributors of the consequences that would befall them if they did not continue to abide by their exclusivity agreements with Graco. Id. ¶ 115.  The October 2007 Letter stated in relevant part:

> It is our opinion that taking on an additional competitive product line may significantly reduce the "best efforts" of a Graco distributor to sell our Graco and Gusmer product lines.  Graco realizes that a business owner must make independent decisions regarding product lines competitive to Graco and Gusmer product offerings.  Graco makes similar independent business decisions regarding the addition of new distributors in a given geographic area.
>
> Should a distributor add a competitive product line, it will result in an immediate review of our business relationship and may impact access to specific products, changes in addendum status or possible elimination of our distributor agreement.  If you are considering adding a Graco or Gusmer competitive equipment offering to your business, we ask that you give careful thought prior

to making your final decision.

This position has been adopted by us unilaterally.

Id.; Graco Inc. v. PMC Global, Inc., Civ. No. 08-1304 (D.N.J.) at Gama Countercl. [D.N.J.

Docket No. 23] Ex. 2.

**E.  Graco's 2008 Litigation with PMC, Garaf, and Gama**

In March of 2008, Graco filed a federal lawsuit in New Jersey against PMC, Garraf, and

Gama alleging theft of trade secrets and breach of contract.  Id. ¶ 101, Graco Inc. v. PMC

Global, Inc., Civ. No. 08-1304 (D.N.J.) at Compl. ("Graco Compl.") [D.N.J. Docket No. 1].

Graco alleged that PMC and the former Gusmer employees working with PMC unfairly

exploited Gusmer intellectual property and goodwill that had been sold to Graco.  Graco Compl.

¶¶ 47, 58-86.  On June 30, 2008, Gama responded to Graco's Complaint and asserted antitrust

counterclaims (the "Gama Counterclaim") against Graco.  Gama alleged a scheme by Graco to

exclude competition in the fast-set market, and also accused Graco of exclusive dealing,

monopolization, and conspiracy to monopolize.  Gama Countercl. ¶¶ 1, 3.  Gama attached the

October 2007 Letter as an exhibit to its publicly-filed Counterclaim.  Id. Ex. 2.

**F.  FTC's 2013 Complaint, Consent Decree, and Order**

After the litigation in New Jersey began, the Federal Trade Commission ("FTC")

initiated an investigation of Graco's alleged anticompetitive conduct.  See Matter of Graco, Inc.,

http://www.ftc.gov/os/caselist/1010215/index.shtm.  On April 17, 2013, the FTC filed a

complaint against Graco, alleging Graco violated antitrust laws by acquiring Gusmer and

GlasCraft, raising prices for fast-set equipment products, reducing product options, and raising

barriers to market entry for manufacturers seeking to compete with Graco.  Compl. ¶ 6.  On the

same day the FTC filed the complaint against Graco, the FTC entered into a Consent Agreement with Graco.  Id. ¶ 8.  The FTC also issued a Decision and Order ("FTC Order") that remains effective until April 17, 2023 and requires Graco "to cease and desist from inviting, entering into, and implementing exclusivity policies with its distributors."  Id.

Simultaneously, Graco entered into a settlement agreement to resolve the litigation with PMC, Gama and others.  Matter of Graco, http://www.ftc.gov/sites/default/files/documents/cases/2013/04/130418gracodo.pdf at 5.  The settlement was incorporated into the FTC Order and requires PMC to purchase licenses from Graco for PMC's use of the Gusmer intellectual property that Graco acquired in 2005.  Id. at 4, App. C.

Insulate alleges it did not discover Graco and the Distributor Defendants' anticompetetive and conspiratorial conduct until the FTC filed its complaint against Graco in April 2013.  Compl. ¶ 176.

**G.  Insulate's June 2013 Complaint Against Graco and Distributors**

On June 14, 2013, Insulate filed this antitrust lawsuit against Graco and 32 of its alleged distributors.  The Complaint alleges Graco and the Distributor Defendants violated Section 1 of the Sherman Act by entering into a vertical retail price-fixing and market allocation conspiracy (Count I) and by using exclusionary contracts and other conduct to eliminate and bar new market entrants (Count II).  The Complaint also alleges Graco violated Section 2 of the Sherman Act by monopolizing the fast-set equipment market (Count III), and that all Defendants violated this provision by conspiring to acquire, maintain, and enhance Graco's monopoly power (Count IV). The Complaint further alleges all Defendants violated Section 3 of the Clayton Act by using

exclusionary contracts to substantially lessen competition (Count V), and that Graco violated

Section 7 of the Clayton Act by unlawfully acquiring Gusmer and GlasCraft (Count VI).

Finally, the Complaint asserts claims against all Defendants under 22 state antitrust laws and

Puerto Rico's antitrust law (Count VII), and under 11 state consumer protection laws (Count

VIII).  Insulate seeks damages, treble damages, and injunctive relief.  The requested injunctive

relief proposes: (1) prohibiting Defendants from continuing to exclusively deal with one another;

(2) requiring Distributors to sell 25% non-Graco fast-set equipment; and (3) divesting Graco of

its fast-set equipment business.

Graco and the Distributor Defendants move for dismissal of the Complaint under Rule

12(b)(6) of the Federal Rules of Civil Procedure.  Graco also moves to stay discovery, and

Insulate moves to expedite discovery.

### III.  DISCUSSION

**A.  Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure states that a party may move to dismiss a

complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

The court construes the pleadings in the light most favorable to the nonmoving party, and the

facts alleged in the complaint must be taken as true.  Hamm, 15 F.3d at 112.

Working in combination with Rule 8, Rule 12 requires the plaintiff's factual allegations

to "raise a right to relief above the speculative level," and push claims "across the line from

conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  In other

words, the complaint must establish more than a "sheer possibility that a defendant has acted

unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). However, a court "must not presume the truth of legal conclusions couched as factual allegations," and should "dismiss complaints based on 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" Hager v. Ark. Dept. of Health, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting, in part, Twombly, 550 U.S. at 555); see also Retro TV Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 769 (8th Cir. 2012) ("Conclusory statements and naked assertion[s] devoid of further factual enhancement are insufficient.") (quotations and alterations omitted).

In ruling on a motion to dismiss, a district court "generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotations and citations omitted); see also Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) (stating a court may consider public records and matters referenced in the complaint in ruling on a motion to dismiss).

**B. Federal Anti-trust Claims**

**1. Statute of Limitations**

Graco and the Distributor Defendants seek dismissal of the federal antitrust claims, arguing inter alia that the claims for damages under the Sherman Act and Clayton Act are time-barred. "Federal antitrust causes of action are governed by a four-year limitations period." Varner v. Peterson Farms, 371 F.3d 1011, 1019 (8th Cir. 2004) (citing 15 U.S.C. § 15b).

"Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business."  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971).

Defendants argue the acts that allegedly injured Insulate's business—thereby causing Insulate's claims to accrue and the limitations period to commence—were committed before June 14, 2009, which is four years before Insulate's filing of the Complaint on June 14, 2013. Specifically, Defendants' entry into vertical price-fixing and market allocation conspiracies, as alleged in Count I, began "at least as early as 2005."  Compl. ¶ 199.  Defendants' entry into exclusionary contracts or agreements, as alleged in Counts II, and V, occurred sometime prior to October of 2007, because Graco's alleged purpose in sending the October 2007 Letter was to "remind" Distributors of the consequences of not abiding by the agreements.  Compl. ¶ 115. Graco's monopolization of the fast-set equipment market, as alleged in Count III, occurred when Graco acquired Gusmer and GlasCraft in 2005 and 2008, respectively.  Id. ¶¶ 148-56.  The conspiracy among all Defendants to maintain Graco's monopoly power, as alleged in Count IV, began before Gama attempted to reenter the fast-set equipment market in 2007.  Id. ¶ 223. Defendants thus contend the limitations period has expired and the claims must be dismissed.

Insulate argues the federal anti-trust claims are not time-barred because (1) the limitations period was tolled under the fraudulent concealment doctrine, and  (2) the limitations period was restarted under the continuing violations doctrine.

### a.  Fraudulent Concealment

The fraudulent concealment doctrine applies if a plaintiff proves that (1) a defendant concealed the plaintiff's cause of action, (2) the plaintiff failed to discover the action, and (3) the

plaintiff exercised due diligence in attempting to discover the claim.  In re Milk Prods. Antitrust Litig., 84 F. Supp. 2d 1016, 1022 (D. Minn. 1997).  If these elements are met, "the limitation period begins to run from the time that the plaintiff, by the exercise of reasonable diligence, discovers or should have discovered his cause of action."  In re Bulk Popcorn Antitrust Litig., No. 3-89-0710, 1990 WL 123753, at *5 (D. Minn. June 19, 1990).  Insulate argues Defendants prevented it from learning of the antitrust conspiracy until the FTC filed its litigation in April of 2013, and so the limitations period did not begin to run until that time.

Assuming without deciding that the first two elements of the fraudulent concealment doctrine are met, Insulate cannot prove that it exercised diligence in attempting to discover the antitrust conspiracy.  A plaintiff who becomes aware of facts and activities that would "create notice and excite attention" requires inquiry on the part of the plaintiff.  Milk Prods., 84 F. Supp. 2d at 1024.  When prices are raised and competition is substantially eliminated, "[t]his fact alone would seem to excite attention and thus put [a] Plaintiff[ ] on inquiry notice."  Id.  Here, Insulate was aware of facts sufficient to excite its attention and put it on notice of its potential antitrust claims.  After Graco acquired Gusmer in 2005, Gusmer products became obsolete, prices for fast-set equipment increased, and choices for fast-set equipment declined.  These facts would have drawn Insulate's attention when it became forced to "begrudgingly" switch to more expensive fast-set equipment models.  Compl. ¶ 161; see also In re Beef Indus. Antitrust Litig., 600 F.2d 1148, 1171 (8th Cir. 1979) ("Those who have learned of facts calculated to excite inquiry must inquire.") (quotations omitted).

Moreover, just as the FTC litigation put Insulate on notice of its claims in April 2013, the New Jersey litigation should have put Insulate on notice of its claims when Gama filed its

Counterclaim against Graco in June of 2008.  "The filing by others of a similar lawsuit against the same defendants may in some circumstances suffice to give notice" if the litigation uncovers information that would tend to verify a plaintiff's allegations or suspicions.  Beef Indus., 600 F.2d at 1171.  The circumstances of the New Jersey litigation sufficed to give Insulate notice of its claims back in June 2008, because the October 2007 Letter on which Insulate heavily relies to support its present claims was attached as an exhibit to Gama's publicly-filed Counterclaim. Thus, the New Jersey litigation that occurred five years before this case was filed uncovered information that would tend to verify Insulate's allegations or suspicions.

For these reasons, Insulate did not exercise due diligence in attempting to discover its antitrust claims, and the doctrine of fraudulent concealment does not apply.

### b.  Continuing Violation Doctrine

Insulate next argues the federal antitrust claims are not time-barred because the statute of limitations was restarted by the continuing violation doctrine.  The continuing violation doctrine provides that each overt act that is part of a violation and that injures the plaintiff starts the statutory period running again.  Klehr v. A.O. Smith Corp., 521 U.S. 179, 189 (1997).  An overt act is required to restart the statute of limitations, and the limitations period runs from the date of the last overt act.  Varner, 371 F.3d at 1019.

The elements of an overt act are: (1) a "new and independent act that is not merely a reaffirmation of a previous act," and (2) the infliction of new and accumulating injury on the plaintiff.  Id.  To qualify as a continuing violation, the new overt act "must be more than the unabated inertial consequences of the initial violation."  Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc., 392 F.3d 265, 269 (8th Cir. 2004).  Additionally, "acts that simply reflect or

implement a prior refusal to deal or acts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations."  Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1052 (8th Cir. 2000) (quotation omitted).

Insulate contends that Defendants' continued adherence to the conspiracy to boycott constituted continuing violations.  However, if there was a conspiracy, Defendants' continued compliance would have simply reflected the unabated inertial consequences of the Defendants' alleged agreements to exclude new entrants to the fast-set equipment market.  These agreements are alleged to have been reached at least as early as 2007, and Insulate has not alleged that new acts were required to maintain the unlawful arrangements.  Indeed, according to the Complaint, "the threat of loss of a distributorship [was] sufficient to hold the conspiracy together."  Compl. ¶ 168; see also id.¶ 241 (alleging Graco's status as the sole supplier of fast-set equipment has enabled Graco "to prevent its distributors from withdrawing from the conspiracy").

Insulate contends a February 2012 letter from Graco to Distributors "reminding them they were not to carry the Gama product line was an overt act in furtherance of the conspiracy that started the limitations period running anew.  However, the first element of an overt act expressly states that a "reaffirmation of a previous act" cannot constitute an overt act.  The February 2012 letter merely reflected and reaffirmed the alleged prior agreement to eliminate new entrants such as Gama from the fast-set equipment market, and therefore did not restart the

limitations period.[5]

Insulate further argues that Defendants committed an overt act each time a supra-competitive price was changed in furtherance of the price-fixing conspiracy.  The analysis of whether sales at supra-competitive prices constitute a continuing violation differs depending on whether the claim is brought under the Clayton Act or the Sherman Act.  With respect to a claim under Section 7 of the Clayton Act, which forbids acquisitions that substantially lessen competition or tend to create a monopoly, the Eighth Circuit has held that post-merger sales at higher prices are not continuing violations because "such acts [are] not undertaken to further an illegal policy of merger or to maintain the merger."  Midwestern Mach., 392 F.3d at 271 (holding increased hub premiums charged post-merger were "not continuing violations of the Clayton Act sufficient to restart the statute of limitations"); see also Concord Boat, 207 F.3d at 1052 (refusing to apply continuing violation doctrine where defendant's conduct was an "unabated inertial consequence" of the initial acquisition).

With regard to the Sherman Act, the Eighth Circuit has observed that an "antitrust continuing violation occurs in a price-fixing conspiracy, actionable under Section 1 of the Sherman Act . . . when conspirators continue to meet to fine-tune their cartel agreement.  These meetings are overt acts that begin a new statute of limitations because they serve to further the

---

[5] Insulate also argues that Graco instructed pro se Defendant Distributor Jack De Mita in August 2009 that he was not to support sub-distributors that also distributed the Gama product line, and that this communication by Graco was an overt act that started the limitations period anew.  Pl.'s Mem. Opp. Graco Mot. Dism. [Docket No. 249] at 12.  However, the August 2009 communication, which is neither mentioned in nor embraced by the pleadings, is a matter outside the record here and may not be properly considered by the Court.  Moreover, even if this communication were considered, it is also a reflection and reaffirmation of the alleged prior refusal to deal.

objectives of the conspiracy." Midwestern Mach., 392 F.3d at 269 (internal citation omitted).

The Complaint does not include any factual allegation that the Distributor Defendants met or

communicated for the purpose of "fine-tuning" or furthering the objectives of their alleged price-

fixing conspiracy.  Although the Complaint alleges that unidentified "key Distributors, as well as

other FSE Distributors, know and communicate with each other at industry conferences and

otherwise," id. ¶ 108, no information is provided about the conferences, who attended them, or

what was discussed.

Additionally, a customer's injury resulting from a price-fixing agreement occurs when

the defendants begin to charge supra-competitive prices.  In re Wholesale Grocery Prods.

Antitrust Litig., 722 F. Supp. 2d 1079, 1088-89 (D. Minn. 2010).  "Once customers have reason

to know of the violation and their damages are sufficiently ascertainable to justify an antitrust

action, the statute begins to run against them."  II Phillip Areeda & Herbert Hovencamp,

Antitrust Law ¶ 320c4 (3d ed. 2007).  Where a defendant's continued sales under an anti-

competitive arrangement merely enforces the initial, unabated arrangement, the sales do not

constitute a continuing violation.  Compare Varner, 371 F.3d at 1020 (holding continued sales

under alleged anti-competitive contracts did not restart limitations period because plaintiffs

"failed to allege any new overt acts, other than enforcement of the initial contracts," that would

toll the statute of limitations) with Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods,

Inc., 824 F.2d 582, 588 (8th Cir. 1987) (discussing Third Circuit's opinion in Hanover Shoe, Inc.

v. United Mach. Corp.,  377 F.2d 776, 794 (3d Cir. 1967), rev'd in part, 392 U.S. 481 (1968),

and noting that defendant's conduct in Hanover went beyond mere continuation of lease-only

policy because defendant entered into new leases when old machinery was no longer working

and actively collected rentals from coerced lessees).  The Complaint does not allege facts suggesting the initial price-fixing agreement was abated or that new acts beyond the initial price-fixing were required to perpetuate the agreement.  Therefore, as with the alleged boycott conspiracy, the alleged price-fixing conspiracy does not constitute a continuing violation, and Insulate's federal antitrust claims are time-barred.

### 2.  Failure to State Claims

Even if the claims alleging price-fixing, market allocation, and exclusionary agreements in Counts I – V were to survive the statute of limitations challenge, the claims must nevertheless be dismissed because the Complaint fails to allege sufficient facts to "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  The claim of a "vertical retail price-fixing agreement and conspiracy," alleged in Count I, rests on the conclusory statement that "Graco with each of the Distributors individually and collectively agreed to vertically fix the price of fast-set equipment," Compl. ¶ 171, and on the naked assertion that "[t]he Distributors were economically motivated to join and enforce the conspiracy to exclude new entrants in the FSE market, because the conspiracy enabled Distributors to: charge Contractors anticompetitive prices for fast-set equipment, and control geographic distribution areas and exclude new distributors from such areas, who might be willing to sell new entrants' products."  Id. ¶ 112. The Complaint has no factual allegations identifying which Distributors charged anti-competitive prices and which Distributors controlled which geographic areas, much less conduct or communications suggesting concerted or conspiratorial action by Distributor Defendants. Thus, the bare allegations of a price-fixing conspiracy are too vague to put the Defendants on notice of the factual grounds for this claim.  See Milk Prods., 84 F. Supp. 2d at 1020 (dismissing

price-fixing claim based on vague allegations that defendant engaged in illegal pricing discussions with other defendants and unnamed co-conspirators by phone and in person, illegally allocated customers, and illegally enforced compliance with conspiracy).

The claim that Defendants conspired to eliminate new entrants to the fast-set equipment market through the use of exclusionary contracts, as alleged in Counts II, IV, and V, also fails to state a plausible claim for relief. An exclusionary practice is not an exclusionary contract or conspiracy if the practice is "merely a unilateral or independent decision." Quality Mercury, Inc. v. Ford Motor Co., 542 F.2d 466, 469 (8th Cir. 1976). Here, the Complaint fails to allege facts showing more than unilateral action by Graco. Although the Complaint conclusorily alleges the Distributor Defendants conspired with Graco and each other by entering into exclusivity arrangements with Graco, the October 2007 Letter referenced in the Complaint explicitly stated that Graco had "unilaterally adopted" its exclusivity policy, and that each Distributor "must make independent decisions regarding product lines competitive to Graco and Gusmer product offerings." Additionally, given Graco's ultimatum, "there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway." Twombly, 550 U.S. at 566. Indeed, the Complaint as much as acknowledges that each of the Distributor Defendants had an independent and individual self-interest in acquiescing to Graco's demands for exclusivity: "Incumbent distributors cannot afford to take on a new competitive product line, if they risk the loss of access to Graco's products, and new entrants cannot compensate the distributors to make such a switch." Compl. ¶ 113. The Complaint specifically recounts an instance in which a Distributor acquiesced to Graco's exclusivity policy because acquiescence was "a better decision for [the Distributor's] business." Id. ¶ 128. The Complaint also states that

Graco's "agree[ment]" with Defendant Distributors "reduced Distributors' willingness <u>and</u> <u>ability</u> to carry the products of new entrants." <u>Id.</u> ¶ 95.  In other words, Distributor Defendants could not carry new entrants' products even if they wanted to.

In sum, Insulate's claims for damages under the federal antitrust laws accrued more than four years ago, and the fraudulent concealment and continuing violation doctrines do not apply to prevent the claims from being time-barred.  Therefore, the claims for damages in Counts I – V are dismissed based on the statute of limitations.  Additionally, to the extent they are not time-barred, the claims involving price-fixing, market allocation, and exclusivity conspiracies and agreements in Counts I – V are dismissed based on Insulate's failure to allege sufficient facts to push the claims "across the line from conceivable to plausible."  <u>Twombly</u>, 550 U.S. at 570.

### 3. Injunctive Relief

Insulate also requests injunctive relief on its federal antitrust claims.  Insulate seeks an order prohibiting Graco and Distributors from continuing to deal exclusively with one another, requiring Distributors to sell 25% non-Graco fast-set equipment, and divesting Graco of its fast-set business.

Each of the three requested equitable remedies fails as a matter of law.  First, Insulate's request to prohibit Graco and Distributors from continuing to deal exclusively with one another lacks merit because it duplicates the FTC Order prohibiting Graco from continuing its exclusive-dealing practices.  Second, the request for a sales quota is not a reasonable remedy because "[c]ourts are ill suited to act as central planners, identifying the proper price, quantity, and other terms of dealing.  No court should impose a duty to deal that it cannot explain or adequately and reasonably supervise."  <u>Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.</u>, 555 U.S. 438, 452-53

(2009) (quotations and internal citations omitted).

Third, equitable principles bar the claim for divestiture.  Divestiture is the "most drastic" of antitrust remedies.  Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1234 (8th Cir. 2010).  "Never has a federal court ordered divestiture at the request of a private party who was neither a customer nor a competitor of the merging parties."  Id.  In determining whether to impose the extreme remedy of divestiture, courts balance the potential benefit to the plaintiff against the hardship caused by forced divestiture.  Id. at 1235.  For example, in Ginsburg, the Eighth Circuit determined divestiture was barred as a matter of law because the challenged acquisition had occurred nearly two years earlier, and the assets and operations of the merged corporations had already been combined.  Id. at 1235-36.  The Eighth Circuit ruled that the obvious hardship that would result from a court decree splitting up the merged entities outweighed the potential benefits end users would gain from divestiture.  Id.  Similarly here, the potential benefit to end-users of fast-set equipment would be outweighed by the hardship that would result from divesting Graco of its fast-set equipment business.  Graco's acquisition occurred over five years ago, and divestiture would impose obvious hardship on Graco employees and Distributors.  Therefore, Insulate's claims for equitable relief in Counts I-VI are dismissed.

## C.  State Law Claims

Defendants argue that Insulate lacks standing to assert claims for alleged violations of state, other than California, antitrust and consumer-protection laws, because Insulate does not reside in those states and has not alleged suffering injury in those states.  Insulate responds that the standing issue is premature because no class has yet been certified.  Insulate argues class-certification issues must be decided before consideration of Article III standing.

"It is well-settled that a named plaintiff in a class action lawsuit is required to establish Article III standing." In re Magnesium Oxide Antitrust Litig., Civ. No. 10-5943 (DRD), 2011 WL 5008090, at *7 (D.N.J. Oct. 20, 2011) (citing Lewis v. Casey, 518 U.S. 343, 357 (1996). However, courts differ over the question of

> whether, pre-class certification, named plaintiffs are required to establish standing for each and every claim set forth in a class action complaint, or whether it is sufficient to establish standing for a single claim because a court will determine if the named plaintiffs have standing to represent the unnamed class members seeking redress under the balance of asserted claims during the class certification process pursuant to Federal Rule of Civil Procedure 23.

Magnesium Oxide, 2011 WL 5008090, at *8; see also In re Packaged Ice Antitrust Litig., 779 F. Supp. 2d 642, 654-58 (E.D. Mich. 2011) (noting federal court split and surveying cases); In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig., Civ. No. 12-169, 2013 WL 5503308, at *11 (D.N.J. Oct. 2, 2013) (same).

The split among courts stems from the two Supreme Court cases of Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997), and Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999). Both cases concern global settlements of class actions, address the standing of absent class members (rather than named plaintiffs), and involve situations in which the court was simultaneously presented with class certification issues and Article III issues. Magnesium Oxide, 2011 WL 5008090, at *9-10; In re Wellbutrin XL Antitrust Litig., 260 F.R.D. 143, 153-55 (E.D. Pa. July 30, 2009). In each case, the Supreme Court resolved class certification issues prior to resolving Article III standing, because the class certification issues were dispositive in those cases and thus were 'logically antecedent to the existence of Article III issues . . . .'" Ductile Iron, 2013 WL 5503308, at *12 (quoting Amchem, 521 U.S. at 591-92).

Some courts interpret <u>Amchem</u> and <u>Ortiz</u> as requiring a court to defer Article III standing issues until after class certification. <u>See</u> <u>In re Grand Theft Auto Video Game Consumer Litig.</u>, No. 06-1739, 2006 WL 3039993, at *3 (S.D.N.Y. Oct. 25, 2006); <u>In re Buspirone Patent Litig.</u>, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002).

Other courts read <u>Amchem</u> and <u>Ortiz</u> more narrowly, interpreting the cases to

> stand [only] for the proposition that, in cases where a court is presented with class certification and Article III standing issues <u>simultaneously,</u> and the class certification issues are dispositive in that they pertain to statutory standing—i.e. whether a statute authorizes a given party to sue in the first place, the certification issues are 'logically antecedent' to the standing issues and the court may therefore elect to address the certification issues first in the interest of judicial restraint.

<u>Ductile Iron</u>, 2013 WL 5503308, at *12 (quoting <u>Magnesium Oxide</u>, 2011 WL 5008090, at *10) (alteration in original). Courts adopting this more limited interpretation require a named plaintiff to establish standing for each claim set forth in a class action when the issue is presented prior to class certification. <u>See, e.g.</u>, <u>Ductile Iron</u>, 2013 WL 5503308, at *11 ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."); <u>In re Graphics Processing Units Antitrust Litig.</u>, 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) (stating "standing can be addressed before class certification" and dismissing claims under antitrust laws of states in which no named plaintiff resided); <u>cf.</u> <u>Chin v. Gen. Mills, Inc.</u>, Civil No. 12-2150 (MJD/TNL), 2013 WL 2420455, *3 (D. Minn. June 3, 2013) (granting Rule 12 motion to dismiss certain claims in a putative class action and noting that "other courts routinely dismiss claims in consumer class actions that attempt to seek relief

relating to products that the named plaintiffs have not purchased").[6]  Were a named plaintiff not

required to establish Article III standing for each class action presented, "named plaintiffs in a

proposed class action, with no injuries in relation to the laws of certain states referenced in their

complaint, [would be allowed ] to embark on lengthy class discovery with respect to injuries in

potentially every state in the Union."  Wellbutrin, 260 F.R.D. at 155.  This Court finds this

reasoning persuasive and dismisses those claims for which Insulate cannot establish Article III

standing.

"[N]amed plaintiffs lack standing to assert claims under the laws of the states in which

they do not reside or in which they suffered no injury."  Ductile Iron, 2013 WL 5503308, at *11.

Insulate is a resident of California, and has not alleged that it suffered injury in any other state.

Additionally, Insulate has not identified any specific state in which wrongful conduct occurred

that may be causally connected to Insulate's injury.  Thus, Insulate lacks standing to assert any

of the state law claims alleged in Counts VII and VIII of the Complaint with the possible

exception of the California antitrust claim, Cal. Bus. & Prof. Code §§ 16700 et seq., alleged in

Count VII, and the claim that Defendants violated California's prohibition against unfair

competition or unfair or deceptive acts or practices under Cal. Bus. Prof. Code §§ 17200 et seq.,

alleged in Count VIII.

Furthermore, California's antitrust statute is subject to a four-year statute of limitations.

Cal. Bus. & Prof. Code § 16750.1 ("Any civil action to enforce any cause of action for a

violation of this chapter shall be commenced within four years after the cause of action

---

[6]  The parties have not cited, nor has this Court located, any Eighth Circuit Court of
Appeals decision on this issue.

accrued."). Thus, this claim is time-barred for the same reasons as the federal antitrust claims. See Oliver v. 3D-3C, LLC, No. C 11-01260 JSW, 2012 WL 1835740, at *3 (N.D. Cal. May 21, 2012) (finding plaintiff's antitrust claims under California law fell "outside the statute of limitations period for all of the same reasons applicable to its federal antitrust claims"). Therefore, Count VII is dismissed in its entirety.

The claim in Count VIII for violation of the California Business and Professions Code § 17200 must also be dismissed. "An action based on Section 17200 'borrows' violations of other laws and treats them as unlawful practices." Id., at *4. Insulate has failed to adequately allege a violation under any other law, and thus has also failed to state a claim under § 17200. See id. ("Because the Court has concluded that Plaintiffs have failed to state a claim under any independent law, the Court similarly finds that Plaintiffs have failed to state a claim under Section 17200 for unlawful business practices and dismisses the claim."). Therefore, Count VIII is dismissed in its entirety.

Because Insulate has failed to allege any plausible claims for relief, this lawsuit is dismissed as to all Defendants.[7]

**D.  Discovery Motions**

The parties' discovery motions are rendered moot by the dismissal of all claims in this action. Therefore, the discovery motions are denied.

---

[7] Distributor Defendants Dove Equipment Co. and Jack De Mita did not file a motion to dismiss or join in the motions to dismiss by the other Distributor Defendants. However, the Complaint does not allege any basis to differentiate the claims asserted against them from the motion to dismiss of the other Defendants. Therefore, the claims against these additional Defendants are also dismissed based on Insulate's failure to allege plausible claims for relief.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED:**

1.      Defendants Graco, Inc. and Graco Minnesota, Inc.'s Motion to Dismiss [Docket No. 211] is **GRANTED**;

2.      Distributor Defendants' Motion to Dismiss [Docket No. 224] is **GRANTED**;

3.      Defendant Spray Foam Nation's Motion to Dismiss [Docket No. 241] is **GRANTED**;

4.      Defendant Graco, Inc. and Graco Minnesota, Inc.'s Motion to Stay Discovery [Docket No. 232] is **DENIED**; and

5.      Plaintiff Insulate SB, Inc.'s Motion for Expedited Discovery [Docket No. 254] is **DENIED**.

6.      All claims in Plaintiff Insulate SB, Inc.'s Complaint are **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 11, 2014.